UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:15-CV-00907-TBR

WANDA K. BRUNNER                                                                            PLAINTIFF

v.

NANCY A. BERRYHILL,                                                                         DEFENDANT
Acting Commissioner of Social Security[1]

## Memorandum Opinion and Order

After her application for disability benefits was denied, Plaintiff Wanda K. Brunner filed this action seeking judicial review. Magistrate Judge Whalen issued a report and recommendation which recommended that the findings of the Administrative Law Judge be affirmed. [DN 25.] Brunner filed objections, [DN 26], to which the Commissioner responded, [DN 27]. Fully briefed, this matter is ripe for adjudication. After a review of the administrative record, the Court ADOPTS the Magistrate Judge's recommendation [DN 25], AFFIRMS the findings of the ALJ, and OVERRULES Brunner's objections [DN 26].

## I. Standard of Review

Pursuant to 42 U.S.C. § 405(g), any individual may seek a review of a final decision of the Commissioner of Social Security in the federal district court for the judicial district in which she resides. Section 405(g) provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id*. Stated otherwise, the district court must

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

affirm the conclusions of the Commissioner unless the court determines that an incorrect legal standard was applied or findings of fact are not supported by substantial evidence in the record.  *Id.*; *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Jordan*, 548 F.3d at 422 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The district court may not, however, "try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *see also Garner v. Heckler*, 745 F.3d 383, 387 (6th Cir. 1984)

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ performs a five-step analysis:

(1) If the claimant is engaged in substantial gainful activity, she is not disabled.

(2) If the claimant is not engaged in substantial gainful activity, but her impairment is not "severe," she is not disabled.

(3) If the claimant is not engaged in substantial gainful activity and is suffering from a "severe" impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) Otherwise, if the claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

20 C.F.R. § 404.1520; *see also Jordan*, 548 F.3d at 422. The claimant bears the burden of proof with respect to the first four steps. *Jordan*, 548 F.3d at 422. The burden shifts to the Social Security Administration to prove that there are available jobs in the national economy that the claimant is capable of performing. *Id.* at 423 (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999)).

## II. Facts and Procedural History

As Brunner does not object to the Magistrate Judge's factual findings, but only the legal conclusions drawn from those findings, the following factual summary is taken from the Magistrate Judge's opinion:

> [Plaintiff Wanda] Brunner applied for DIB on October 16, 2012, alleging that she was disabled as of March 2, 2007, due to degenerative disc disease of the cervical and lumbar spine, degenerative joint disease of the right knee, obesity and depression. The Commissioner denied Brunner's claims on initial consideration and on reconsideration. Brunner requested a hearing before an Administrative Law Judge (ALJ).
>
> ALJ William C. Zuber conducted a hearing in Louisville, Kentucky, on June 12, 2014. Brunner attended with her attorney, Christopher Harrell. Brunner and vocational expert (VE) Sharon Lane testified at the hearing. Following the conclusion of the hearing, ALJ Zuber entered a hearing decision on September 3, 2014 that found Brunner is not disabled for the purposes of the Social Security Act.
>
> In his adverse decision, ALJ Zuber made the following findings:
>
> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of March 2, 2007 through her date last insured of December 31, 2012 (20 C.F.R. 404.1571, *et seq.*)
>
> 3. Through the date last insured, the claimant had the following severe impairments: cervical degenerative disc disease, lumbar

3

degenerative disc disease, right knee degenerative joint disease, obesity, and depression (20 C.F.R. 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she would require the option to sit or stand every 30 to 45 minutes and could no more than occasionally stoop, crouch, kneel, and climb ramps or stairs; she could never crawl or climb ladders, ropes, or scaffolds; she could not perform any work above shoulder level; she could occasionally push and/or pull with no more than frequent use the upper extremities [overall]; and she could never have exposure to extreme cold, vibrations, dangerous machinery, and unprotected heights. The claimant could perform non fast-paced or quota driven tasks, would be capable of frequent contact with coworkers and supervisors and occasional contact with the general public, could work in an environment with no more than occasional changes in the work routine or environment, and could sustain concentration, persistence, or pace for two hours at a time.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. 404.1565).

7. The claimant was born on August 12, 1966, and was 46[]years-old, which is defined as a younger individual age 18-49, on the date last insured (20 C.F.R. 404.1563).

8. The claimant has at least a high-school education and is able to communicate in English (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills ([*See*] SSR 82-41 and 20 C.F.R. Part 404, Subpart P, App. 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. 404.1469, 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 2, 2007, the alleged onset date, through December 31, 2012, the date last insured (20 C.F.R. 404.1520(g)).

Brunner sought review of the hearing decision by the Appeals Council. The Appeals Council denied her request for review, finding no reason under the Rules to review ALJ Zuber's decision. The present lawsuit followed.

[DN 25 at 1-3 (record citations omitted).]

The Magistrate Judge issued his Findings of Fact, Conclusions of Law, and Recommendation on October 20, 2016, recommending to the Court that the Commissioner's decision be affirmed and that Brunner's complaint be dismissed with prejudice. [DN 25 at 30.] Particularly, the Magistrate Judge concluded that "substantial evidence of record" supported the ALJ's determination "that Brunner remains capable of performing a limited range of light work." [*Id*. at 9.] In so finding, the Magistrate Judge noted that Brunner's claim "that she is unable to use her upper extremities to push or pull due to the numbness and tingling in her hands . . . is undercut repeatedly by the treatment notes of her specialists," Drs. Nazar, Guarnaschelli, Geevarghese, Derhake, and Urda. [*Id*. at 17.] Furthermore, upon review of the administrative record, the Magistrate Judge found sufficient facts supporting the ALJ's determination that Brunner's "statements concerning the intensity, persistence and limiting effects of [Brunner's complaints of

5

disabling pain] were not entirely credible." [*Id.* at 22.] Finally, the Magistrate Judge held that the ALJ did not misapply the treating physician rule when he rejected a 2014 opinion from Brunner's treating physician, Dr. Watson, which stated that Brunner was in fact disabled. [*Id.* at 28.] Brunner filed timely objections to the Magistrate Judge's recommendation, [DN 26], and the Commissioner responded, [DN 27]. This matter is now ripe for adjudication.

### III. Discussion

Brunner raises several objections to Magistrate Judge Whalen's findings. She claims that both the Magistrate Judge and the ALJ evaluated her subjective complaints of pain under the wrong standard of review, and misconstrued an earlier opinion of her treating physician, Dr. Watson. Brunner also contends that the Magistrate Judge improperly characterized a state agency reviewer as a physician. Finally, Brunner argues that by rejecting a later opinion rendered by Dr. Watson, the ALJ and Magistrate Judge ran afoul of the treating physician rule. The Court will address each objection in turn.

#### A. Standard of Review

First, Brunner argues that the Magistrate Judge erred by improperly conflating the two-prong standard of review for Social Security cases. While Brunner agrees that the Court "must affirm the Commissioner's conclusions, absent a determination that the Commissioner has failed to apply the correct legal standards [] or has made findings of fact unsupported by substantial evidence in the record," *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997), she also

6

contends that "the Social Security Administration has adopted rules which govern the determinations of findings of fact, especially with regard to determinations of credibility of witnesses." [DN 26 at 1.] When those rules apply, Brunner says, they "act as to increase the amount of evidence necessary to support the conclusions of the Commissioner." [*Id.* at 1-2.] Brunner believes that the ALJ was required to apply these higher standards when evaluating the credibility of her testimony regarding the severity of her pain. [*Id.* at 2.]

Because Brunner fails to cite the rules to which she refers, it is somewhat difficult for the Court to discern the true basis for this first objection. Nevertheless, the Court notes that "[a]n individual's statements as to 'pain or other symptoms will not alone establish that [she is] disabled . . . .'" *Walters*, 127 F.3d at 531 (quoting 20 C.F.R. § 404.1529(a)). Rather, the Sixth Circuit "employ[s] a two-part analysis in evaluating complaints of disabling pain." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862 (6th Cir. 2011) (citing 20 C.F.R. § 416.929(a) (other citations omitted). "First, the ALJ should ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exits, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Id.* at 862-83 (citing 20 C.F.R. § 416.929(a)). Ultimately, though, the ALJ, not the reviewing court, is tasked with "evaluat[ing] the credibility of witnesses, including that of [the] claimant . . . [though] such determinations must find support in the

7

record." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638 (6th Cir. 2016) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 237 (6th Cir. 2007)). So long as "the ALJ's explanations for partially discrediting a claimant's testimony are reasonable and supported by substantial evidence in the record," the Court must leave the ALJ's findings intact. *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 649 (6th Cir. 2013) (internal quotation marks and citation omitted).

Here, a review of the ALJ's decision in Brunner's case reveals that he did not reject Brunner's complaints of pain in a cursory or perfunctory manner. Instead, the ALJ carefully considered Brunner's testimony in conjunction with the medical evidence of record, ultimately concluding that her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." [DN 18-2 at 31.] Specifically, the ALJ observed that although Brunner's medical records "confirm[] . . . the existence of [her] severe physical impairments . . . [Brunner] had fairly routine/conservative treatment . . . with just mild to moderate objective and clinical findings that fail to support a level of impairment as to preclude all work activity." [*Id.*] He also noted that during a three-month span in 2007, Brunner cancelled or was a no-show for eight physical therapy appointments. [*Id.*] During a later period in 2012, Brunner indicated that she undertook physical activity at least three times per week, reported her pain as "tolerable" and "between two and three of 10 on the pain scale," and requested a new prescription for Lortab, a pain medicine, because hers had expired. [*Id.* at 32.] Additionally, in the ALJ's view, Brunner "described daily activities that

8

[were] not limited to the extent one would expect[] given the complaints of disabling symptoms and limitations," including Brunner's ability to "care for her own hygiene and grooming, fix simple meals, perform light household chores, grocery shop at times, drive an automobile independently, use the computer, attend yard sales, and occasionally meet people for lunch." [*Id.* at 34.] Brunner also went on multiple vacations during the period in which she complained of disabling neck, back, and knee pain. [*Id.*]

Based upon these considerations, the ALJ concluded that Brunner's "testimony regarding fluctuating pain . . . [did] not appear fully consistent with the evidence." [*Id.* at 34-35.] In so concluding, the ALJ did not make "blanket assertions that [Brunner] [was] not believable." *Kalmbach*, 409 F. App'x at 863. Rather, he "explain[ed] the credibility determinations in his decision with sufficient specificity as 'to make clear . . . the weight the adjudicator gave to the individual's statements and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4). On similar facts, the Sixth Circuit has upheld an ALJ's decision to discount the credibility of a claimant's subjective complaints of pain. *See Downs v. Comm'r of Soc. Sec.*, 634 F. App'x 551, 556-57 (6th Cir. 2016) (upholding ALJ's credibility assessment when claimant "performed basic self-care, drove on an unrestricted driver's license, sometimes shopped alone, attended medical appointments, cared for five pets . . . and did laundry and some cleaning."). Moreover, the ALJ sought to accommodate Brunner's symptoms "by limiting [Brunner] to the light exertion level with a sit stand option." [DN 18-2 at 35.]

9

The ALJ's decision to partially discount Brunner's testimony was supported by substantial evidence, and the Magistrate Judge did not err in upholding that decision.

### B. Residual Functional Capacity

Second, Brunner asserts that the Magistrate Judge and the ALJ misapplied the definition of residual functional capacity (RFC) by improperly relying upon the November 5, 2007 "Fit for Duty Assessment Sheet" completed by Dr. Jill Watson, Brunner's treating physician, for Brunner's then-employer, the Transportation Safety Administration. [DN 26 at 2; DN 18-7 at 104-13.] Dr. Watson found, among other things, that Brunner was then unable to "stand and remain standing for periods up to 3 hours without sitting," repeatedly "pick up . . . from a standing position an object weight 40 pounds, transport the object a minimum of 8 feet, and place the object on a table top a minimum of 36 inches in height," or "assist another individual to lift . . . an object weighing 75 pounds, transport the object a minimum of 8 feet, and place the object on a table top a minimum of 36 inches in height." [DN 18-7 at 104-05.] Those apparently being the requirements of Brunner's job as a TSA screening agent, Dr. Watson concluded that due to Brunner's degenerative disc disease, she was unable to return to work at that time. [*Id.* at 113.]

In Brunner's estimation, Dr. Watson's 2007 evaluation "was not designed to measure [her] residual functional capacity or the most that Ms. Brunner could do" – the touchstone of the RFC determination. [DN 26 at 2 (emphasis removed)]; *see* 20 C.F.R. § 404.1545 ("Your residual functional capacity is the most you can still do

10

despite your limitations."). Instead, the evaluation was used by the Transportation Safety Administration "to determine whether or not an employee could return to a specific job . . . based on [the] minimal duties for the job in question." [*Id.*] When Dr. Watson says in her report that Brunner "could not pick up an object weighing forty pounds from the ground and transport it eight feet to place it on the top of a table [thirty-six] inches in height," according to Brunner, Dr. Watson is not saying that Brunner "does retain the ability to perform that [same] task with a[] [lighter] object." [*Id.* at 2-3.]

This second objection mischaracterizes the findings of the ALJ and the Magistrate Judge. A review of the ALJ's decision reveals that he did not interpret Dr. Watson's 2007 evaluation in the manner Brunner suggests he did. After reciting the findings of that evaluation, the ALJ writes, "Dr. Watson's limitations do not appear entirely inconsistent with either the objective and clinical findings or the conclusions reached in this decision. . . . [T]he physical limitations . . . do not seem to preclude the restricted range of light work set forth in this decision." [DN 18-2 at 37.] Nowhere in his decision does the ALJ suggest that the limitations expressed in Dr. Watson's 2007 opinion represent Brunner's maximum physical capabilities. Likewise, the Magistrate Judge recognized that Dr. Watson's opinion found only that Brunner was incapable of performing her past duties at the TSA - nothing more, nothing less. [DN 25 at 12.] In doing so, neither the ALJ nor the Magistrate Judge misapplied the definition of residual functional capacity. The ALJ's determination that Brunner retained the RFC to perform light work was

11

supported by substantial evidence after a thorough review of the entire record, and the Magistrate Judge did not err in upholding that conclusion.

### C. Assessment of Rodney Broome

Third, Brunner states that the Magistrate Judge erroneously referred to "Rodney Broom, SDM" as a physician, when in fact "SDM" stands for "Single Decision Maker." [DN 26 at 3.] Brunner is apparently referring to one Rodney Broome, characterized by the Magistrate Judge as "a state agency reviewer." [DN 25 at 17.] The administrative record reveals that Broome was tasked with an initial evaluation of Brunner's disability status [DN 18-3 at 2-16.] Based upon Dr. Urda's earlier physical examination, Broome found that Brunner possessed residual functional capacity to occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, and sit, stand, or walk for about six hours in an eight-hour workday. [*Id.* at 11-12.] Broome's conclusions were reviewed and affirmed by Dr. Alex Guerrero. *See* [*id.* at 29-31.]

In his opinion, the Magistrate Judge states that "[t]he conclusions of the two state agency reviewing physicians . . . concerning Brunner's ability to perform a limited range of light work are well supported by [her] medical records." [DN 25 at 17.] According to Brunner, Broome is not in fact a physician. Even if this is the case, the Court fails to see how the Magistrate Judge's mistake would constitute anything but harmless error. The Magistrate Judge did not lean heavily upon Broome's assessment, and his decision to affirm the ALJ's findings is well-supported by the other evidence of record.

D. Treating Physician Rule

Last, Brunner avers that the Magistrate Judge and the ALJ improperly rejected Dr. Watson's 2014 opinion that she was disabled, in violation of the treating physician rule. [DN 26 at 3.] According to Brunner, the ALJ wrongfully relied upon the opinions of Dr. Urda in rejecting Dr. Watson's opinion, because Dr. Urda's assessment contains no "durational descriptors" regarding Brunner's residual capabilities. [*Id*.] Because Dr. Watson, as Brunner's treating physician, is "better prepared to address" Brunner's physical limitations, she claims, the ALJ and the Magistrate Judge erred in rejecting Dr. Watson's opinion. [*Id*. at 4-5.]

Because of the "'ongoing treatment relationship' between a patient and [her] doctor, the medical opinion of an applicant's treating physician is afforded special consideration under the Social Security Act." *Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 243-44 (6th Cir. 2016) (citing 20 C.F.R. §§ 404.1502, 404.1572(c)(2)). "A treating physician's opinion on the nature and severity of a claimant's impairments is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Id*. (quoting 20 C.F.R. § 404.1527(c)(2)). If the ALJ does not give a treating physician's opinion controlling weight, "the ALJ must provide good reasons for that decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013)). One such reason is that the opinion is "unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence." *Morr*

*v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (citing *Bogle v. Sullivan*, 998 F.2d 342, 347-58 (6th Cir. 1993)). If the ALJ declines to give an opinion controlling weight, the ALJ must still evaluate the weight due to that opinion, taking into account "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404 1527(c)(2) (listing factors). The ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In this case, the ALJ considered two opinions rendered by Dr. Watson, Brunner's treating physician. The first was the 2007 "Fit for Duty Assessment" completed by Dr. Watson and discussed in more detail above. *See* [DN 18-7 at 104-13.] Dr. Watson rendered her second opinion in March 2014, shortly after Brunner had undergone spinal surgery. *See* [DN 18-7 at 383-89.] Based upon her diagnosis of spinal stenosis, Dr. Watson stated that Brunner would be able to lift no more than ten pounds on a frequent basis, and could only sit or stand in one position for less than one hour. [*Id.* at 384, 387.] She further concluded that based upon Brunner's complaints of pain and numbing in her hands, Brunner could

14

not use her hands for gross or fine manipulation on a repeated basis. [*Id.* at 386.] Dr. Watson also believed that although Brunner could bend at the waist, she would never be able to crawl or climb in the workplace. [*Id.*]

In his findings, the ALJ declined to give controlling weight to Dr. Watson's 2014 opinion. [DN 18-2 at 36.] He noted that "the limitations were given within a month of [Brunner's] spinal surgery [and] over a year after the period under consideration," and that Brunner "was not a surgical candidate during the period under consideration and had a significant gap in treatment until 2014." [*Id.*] As such, the ALJ found that Dr. Watson's most opinion was not "well supported by relevant medically acceptable clinical and laboratory diagnostic techniques." [*Id.*]

Neither the ALJ nor the Magistrate Judge erred in their treatment of Dr. Watson's final opinion. In order for Brunner to establish that she is entitled to disability benefits, she "must establish disability on or before [December 31, 2012]," her date last insured. [*Id.* at 25.] But as the ALJ noted, Dr. Watson's 2014 opinion was given well after Brunner's date last insured, and a month after Brunner underwent back surgery for spinal stenosis, the very same condition to which Dr. Watson attributed Brunner's 2014 symptoms. Under those circumstances, the 2014 opinion would seem to have little bearing upon the issue the ALJ was called to consider. And as the Magistrate Judge explained in some detail, many of the work restrictions noted in Dr. Watson's 2014 opinion are substantially out of line with the assessments conducted by Brunner's other physicians during the insured period. *See* [DN 25 at 28-29.] Moreover, the ALJ

15

need not give any weight whatsoever to conclusory statements regarding a claimant's ability to work; that determination rests with the ALJ alone. *Turk v. Comm'r of Soc. Sec.*, 647 F. App'x 638, 640 (6th Cir. 2016) (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)); see 20 C.F.R. § 404.1527(d). To the extent Dr. Watson's 2014 opinion passed upon the ultimate issue of Brunner's disability, the ALJ rightly discounted it. He correctly recognized that her opinion was "unsupported by sufficient clinical findings and [was] inconsistent with the rest of the evidence," *Morr*, 616 F. App'x at 210, and provided "good reasons" for his decision to afford it little weight, *Conner*, 658 F. App'x at 253. By doing so, he did not run afoul of the treating physician rule, and the Magistrate Judge did not commit error by upholding the ALJ's decision in this regard.

## IV. Conclusion

Upon review of the record, ALJ Zuber's decision, and Magistrate Judge Whalen's Findings of Fact, Conclusions of Law, and Recommendation, the Court is satisfied that neither the ALJ nor the Magistrate Judge erred in concluding that Brunner was not disabled within the meaning of the Social Security Act. Therefore, for the foregoing reasons, IT IS HEREBY ORDERED:

The Court ADOPTS the Magistrate Judge's recommendation [DN 25] and AFFIRMS the findings of the ALJ. Brunner's objections [DN 26] are OVERRULED.

A separate judgment shall issue.

CC: Counsel of Record